**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JASON PEREZ,

       Petitioner,

-vs-                                    Case No. 8:18-cv-520-T-36SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

     Jason Perez petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his two state court convictions for attempted first degree murder.  After reviewing the petition, the response and supporting appendix (Docs. 14 and 15), and the reply and supplemental reply (Docs. 20 and 21), the Court will deny the petition.

## I.  FACTS[1]

     Michael Haynes, Titus Virts, and Kellie Shumaker were driving home from a bar and decided to get drugs from Jason Perez.  No one in the group had money.  Haynes knew Perez and walked up to his home to try to get the drugs with a promise to repay him.  Virts and Shumaker stayed in the car.  The lights were off at Perez's home, and Haynes walked across the street to use a neighbor's telephone.

     After twenty minutes, Virts became impatient.  Virts walked up to Perez's home believing that Haynes was still there.  Virts saw Perez standing on his porch near his front door

---

[1] The facts derive from the briefs on direct appeal and the state court record.

and greeted him.  Perez responded by accusing Virts of working with the police.  Virts and Perez exchanged threats and Perez went inside his home to get a gun.

Virts returned to the car to warn Shumaker.  Perez followed Virts and pointed his gun at Virts's face.  Perez demanded that Virts convince him that Virts was not working for the police.  Shumaker intervened and told Perez that Virts was not.  Shumaker and Perez exchanged words and Perez shot Shumaker in the face.  Shumaker fell to the ground, and Perez shot her again in the back of the head.  Virts pleaded for his life and then crawled on his hands and knees to run away.  Perez fired his gun at Virts several times but missed.  Shumaker survived, and both Shumaker and Haynes identified Perez as the shooter.  A woman who lived with Perez testified that Perez was not at home just before the shootings.  No physical evidence tied Perez to the crimes.

The jury found Perez guilty of two counts of attempted first degree murder (Doc. 15-2 at 120–21) and the trial court sentenced Perez to life in prison for the attempted murder of Shumaker and 20 years for the attempted murder of Virts.  (Doc. 15-2 at 126–27)  The state appellate court affirmed the convictions and sentences.  (Doc. 15-2 at 220)  Perez filed a motion for post-conviction relief.  (Doc. 15-2 at 226–48)  The post-conviction court denied the motion and the state appellate court affirmed in an unelaborated decision.  (Doc. 15-2 at 249–624, 661)  Also, Perez filed a petition alleging ineffective assistance of appellate counsel (Doc. 15-6 at 2–9) which the state appellate court denied.  (Doc. 15-6 at 96)  Perez's timely federal petition followed.

## II.  EXHAUSTION, PROCEDURAL DEFAULT, AND COGNIZABILITY

The respondent correctly argues that Ground One is unexhausted and procedurally barred.  (Doc. 14 at 7–8)  A petitioner must exhaust the remedies available in state court before

a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim on state procedural grounds, the federal court instead denies the claim as procedurally barred.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  A petitioner may excuse a procedural default on federal habeas by (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2) demonstrating a miscarriage of justice.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## **Ground One**

Perez asserts that the trial court erred by denying his motion *in limine* to exclude all evidence that he sold drugs.  (Doc. 1 at 5)  Perez moved to exclude the evidence before trial (Docs. 15-2 at 95 and 15-4 at 132–51, 164) and raised the issue on appeal (Doc. 15-5 at 186–90) but neither labeled the issue "federal" nor cited the federal constitution or a case deciding a similar issue based on federal law.  *Reese*, 541 U.S. at 32.  Consequently, Perez failed to exhaust the claim.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law

3

guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). If Perez returns to state court to exhaust the claim, the state court will deny the claim on state procedural grounds. Fla. R. Crim. P. 3.850(b), (c). Perez asserts neither cause nor prejudice nor manifest injustice to excuse the procedural default, and Ground One is procedurally barred from federal review. *Snowden*, 135 F.3d at 736.

Also, the state court concluded that the collateral crimes evidence was relevant. (Doc. 15-4 at 149–50) Whether evidence is relevant is an issue of state evidentiary law, and a state court's determination of state law receives deference in federal court. Fla. Stat. § 90.402; *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure."). Relief on federal habeas is granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is not entitled to relief for a state court's violation of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Consequently, the claim is not cognizable on federal habeas. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citation omitted).

### III. GOVERNING LEGAL PRINCIPLES

**AEDPA**

Because Perez filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim —
>
> (1)      resulted in a decision that was contrary to, or involved
>          an unreasonable application of, clearly established
>          Federal law, as determined by the Supreme Court of the
>          United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence
>          presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

"[C]learly established Federal law" encompasses only the holdings of the Supreme Court at the time of the relevant state court decision.  *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law."  *Williams*, 529 U.S. at 412 (italics in original).  Even clear error is not enough.  *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017).  A federal habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "This is 'meant to be' a difficult standard to meet."  *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by a state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*,

558 U.S. 290, 301 (2010).  A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016).  Also, a state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

**Ineffective Assistance of Counsel**

Perez asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel does not have a duty to raise a frivolous claim). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel

claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In this case, the state court's rejection of Perez's remaining grounds on the merits is owed deference under Section 2254(d). The post-conviction court recognized that *Strickland* governs the ineffective assistance of counsel claims. (Doc. 15-5 at 249–50) Because the state court denied the grounds based on *Strickland*, Perez cannot meet the "contrary to" test in Section 2254(d). Perez instead must show that the state court unreasonably applied *Strickland* or unreasonably determined a fact. The state appellate court denied the petition alleging ineffective assistance of appellate counsel in an unelaborated order. (Doc. 15-6 at 96) Perez must show no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 98.

## IV.  ANALYSIS

### Ground Two

Perez asserts that trial counsel was ineffective for not investigating collateral crimes evidence admitted at trial. (Doc. 1 at 7) The post-conviction court denied the ground as follows (Doc. 15-5 at 250–53) (state court record citations omitted) (italics in original):

> The Defendant claims that his counsel was ineffective for failing to properly investigate and object to the introduction of collateral crimes during an "*in limine Williams*" hearing; thereby allowing "improperly introduced collateral crimes to become a feature of trial." The Defendant cites [ ] *Freeman v. State*,[1] *Czubak v. State*,[2] *Suarez v. State*,[3] and *Drayton v. State*,[4] to support his contention that evidence which tends to show that the accused has committed another crime wholly independent of the crime charged is irrelevant and inadmissible. The Defendant alleges that the collateral crimes introduced in the instant case were incidents where the victims purchased drugs from the Defendant on occasions prior to the charged crimes. He further alleges that these collateral crimes were not being introduced to prove identity, common scheme or design, or to show the propensity to commit similar crimes. Rather, he alleges that these prior collateral crimes are unsubstantiated episodes created by the victims to assassinate the Defendant's character. The Defendant claims that the collateral crimes were not necessary to

prove identity, as the State claimed during the "*in limine Williams*" hearing, because the victims and Mr. Haynes all admitted to knowing the Defendant prior to the crimes charged. Moreover, the Defendant alleges that he was never charged or convicted of any of the collateral crimes. The Defendant alleges that he was prejudiced by the introduction of the collateral crimes because they became a feature of the trial.

[1] 630 So. 2d 1225 (Fla. 4th DCA 1994).

[2] 570 So. 2d 925 (Fla. 1990).

[3] 95 Fla. 42, 115 So. 519 (1928).

[4] 292 So. 2d 395 (Fla. 3d DCA 1974).

The Defendant's claim is without merit. Notably, the cases cited by the Defendant do not hold weight in light of the facts of the Defendant's case. First, the Defendant's case is distinguishable from *Freeman*. In *Freeman*, collateral crime evidence of the defendant being a drug dealer was not introduced as *Williams* Rule evidence as was done so in the Defendant's case. Rather, such evidence came out in *Freeman* for the first time by accident during trial through a witness'[s] testimony when she elaborated on an event where the defendant gave her a bracelet. *Freeman*, 630 So. 2d at 1226. The defendant in *Freeman* immediately moved for a mistrial, but the trial court gave a "curative" instruction instead. *Id.* In reversing and remanding the case, the Fourth District Court of Appeal found the admission of the testimony concerning the collateral crime of drug dealing was not harmless error. *Id.* at 1227. The primary distinguishing factor between the Defendant's case and *Freeman* is that in the instant case, the Defendant's collateral crimes were properly testified to only after the trial court determined at a *Williams* Rule hearing that the collateral crimes were relevant to the issues of identity and motive.

Next, in *Czubak*, the Florida Supreme Court found that it was not harmless error when the trial court refused to grant a mistrial after a witness stated that the defendant was an escaped convict[,] finding the defendant's status as an escaped convict had no relevance to any material fact in issue. 570 So. 2d at 928. Like in *Freeman*, the collateral crime testimony in Czubak did not come in after a thorough *Williams* Rule hearing, and was not relevant to any material issue. Thus, it is likewise distinguishable from the Defendant's case. Further[more], *Suarez* was decided before the *Williams* Rule was enacted by statute; however, it did note that while the *general rule* is that evidence of prior unrelated crimes [is] irrelevant and inadmissible, there are certain well-recognized exceptions to this rule. 95 Fla. at 62–63, 115 So. at 526–27. Here, the Defendant fails to recognize that his case falls within an exception to the general rule; namely, that the collateral crimes were found admissible to prove identity and motive.

9

In *Drayton*, the Third District Court of Appeal found the trial court erred in admitting collateral crime evidence of an unrelated robbery committed by the defendant to prove identity where the defendant was on trial for a separate robbery because identity was not at issue where there was eyewitness testimony clearly identifying the accused. 292 So. 2d at 396. The *Drayton* court further found that where the only common denominator between the two robberies was that both allegedly occurred during the hours of darkness and an accomplice had a gun, the State failed to demonstrate the requisite similarity in operation and the evidence of the collateral robbery was being introduced only for the purpose of illustrating mere propensity in violation of the *Williams* Rule. *Id.* Again, this case is distinguishable from the Defendant's case in that the collateral crimes were used in the Defendant's case to prove not only identity, but motive as well. In other words, the drug-related encounters were not being introduced in the Defendant's trial to demonstrate mere propensity. For a jury to understand the motive the State was intending to argue, it was necessary that the encounter between the Defendant and the victims on the night in question be viewed in the context of a bigger picture. That bigger picture being that the victims had previously purchased drugs from the Defendant; they specifically went to the Defendant's house to purchase drugs again on the night in question; and, the Defendant thought that one of the victims was law enforcement or a confidential informant trying to entrap the Defendant.

Although the State may have initially indicated that it intended to use the collateral crimes to prove identity, it is clear the State actually sought to utilize the collateral crimes to prove motive. At the *Williams* Rule hearing, the State pursued an argument for the admittance of the Defendant's collateral crimes in support of the State's theory that the Defendant shot at the victims because he thought one of them was an undercover cop or a confidential informant. In addition to proving motive, the trial court noted that if the defense's theory was that the Defendant was not present at the time of the crimes, then identity was at issue; and, evidence that the victims know it was the Defendant who shot them because they know the Defendant — they have bought drugs from him before — would be integral to the whole process. The record reflects that defense counsel zealously argued against allowing the Defendant's collateral crimes in. However, the trial court concluded that the collateral crimes were integral to the issues of identity and motive and that it would not be unduly prejudicial to allow their admission.

Furthermore, the trial court noted that although the collateral crimes were inherently prejudicial to the Defendant, they were also beneficial in that they would likewise discredit the victim-witnesses who would have to admit to being drug users. While the trial court ruled against the Defendant in finding that the collateral crimes were admissible, defense counsel was not deficient. Defense counsel ardently opposed the collateral crime evidence by filing a motion *in limine* in response to the State's notice of intent to use *Williams* Rule evidence. Additionally, defense counsel vociferously argued on the Defendant's behalf during the hearing on the matter. Indeed, counsel raised all of the arguments that

> the Defendant now complains his counsel was ineffective for not raising; including, that the collateral crimes were not relevant; that the collateral crimes were not necessary to prove identity; that the collateral crimes could become a feature of the trial by constantly referring to the Defendant as a drug dealer; and, that the collateral crimes were highly prejudicial. Accordingly, counsel was not deficient for failing to properly investigate and object to the introduction of collateral crime evidence because counsel did not fail as the Defendant alleges he did.

Trial counsel filed a written motion to exclude the collateral crimes evidence.  (Doc. 15-2 at 95)  At a hearing on the motion, trial counsel argued (1) the collateral crimes evidence would paint Perez as a drug dealer (Doc. 15-4 at 139), (2) the collateral crimes evidence would unduly prejudice Perez (Doc. 15-4 at 139–40), (3) the collateral crimes evidence was not necessary to prove the crimes (Doc. 15-4 at 140), and (4) the victims could explain that they met Perez several times before the crimes without mentioning the drug sales.  (Doc. 15-4 at 145)  Because trial counsel both moved to exclude the collateral crimes evidence and raised the arguments that Perez contends that trial counsel should have raised, the state court did not unreasonably conclude that the record refutes the claim.  (Doc. 15-5 at 252–53)

Whether the collateral crimes evidence was admissible is an issue of state evidentiary law, and a state court's determination of state law receives deference in federal court.  Fla. Stat. §§ 90.402 and 90.403; *Machin*, 758 F.2d at 1433.  The state court concluded that the collateral crimes evidence was admissible (Doc. 15-5 at 250–52) and the probative value of the evidence was not outweighed by the danger of unfair prejudice.  (Doc. 15-4 at 147–48)

The trial court orally denied the motion *in limine* as follows (Doc. 15-4 at 147–50):

[Court:]    His prior dealings with them led — they're going to say, led him to think that they were somehow affiliated with the cops.

. . .

And I don't know how you separate that out.  Is it prejudicial? Yeah, I'll concede it's prejudicial. I just don't know that there's a better way to come up with it. I mean sometimes, you know —

you know, hard cases make bad law. I mean, I don't think that's the case here.

I just don't think there's a reasonable way to separate it out. And the prejudice you're getting to your client, you know, there's — you know, the victims are going to have to acknowledge that they're dope buyers and this whole milieu is what this — the whole context of the whole situation is.

So, in context of how this came out, I don't think it's unduly prejudicial. I — I just don't have a better way of doing it. Just trying to tiptoe around it and say we just met him or we knew him before, we had seen him in the neighborhood before, doesn't give the context to the whole idea of why, allegedly, Mr. Perez comes up with the idea that somebody's involved with the cops. And that, apparently, is the reason for the shooting right?

. . .

I don't — I don't know how you can separate all that out under the circumstances. So —

. . .

I'm not going to let them call him a drug dealer and — I mean, we're not going to do that whole — we're — we're going to — we're going to soft shoe it. The argument is going to be related to why the [identification] is strong, not disparaging Mr. Perez for the activities that he's engaged in. Right?

. . .

I mean, that's how we're going to limit that. They're not going to be standing up there screaming he's a drug dealer, he shot these people. We're not going there.

You know, the issue in this case — if it's going to be [identification], the issue in this case is going to be, you know, this is why we know it's Mr. Perez, because of the context of the relationship between the parties. And that's how it's going to be argued.

I'm not going to let this turn into convict him because of the activities leading up to this. The activities leading up to this are only there to give context to why those people can identify him in this case.

And so, I'll make sure that we're not — and they'll — they're on notice now that we're not going there with that whole argument. We're going to just try it on the facts.

> And you know, if you want to say — as he pointed out, you
> know, I wasn't there, they were all crack heads; who knows why
> they have an axe to grind with me; then that's fine. That's
> certainly an argument that you can make.
>
> So based on that, I'll deny the motion *in limine*. But I'll indicate
> that we'll be careful in the way that we phrase it and argue it as
> far as the jury is concerned. But I think the context of the
> relationship leading up with it — up to it, can't be severed out.
> And so, that's the reason I'm denying it.

Perez's prior drug sales to the victims were inextricably intertwined with the charged attempted murders.  The prosecution had to prove Perez acted with premeditated intent to kill. (Doc. 15-5 at 760–62)  The prior drug sales were relevant to explain how Perez and the victims knew each other, why Perez believed that one of the victims was working for the police, and why Perez fired his gun at the victims.  *McGirth v. State*, 48 So. 3d 777, 787 (Fla. 2010) ("We find that Sheila Miller's testimony regarding her drug-based relationship with McGirth was not similar fact evidence, and consequently, McGirth's claim does not constitute a true *Williams* rule claim.  The evidence at issue — which, as explained below, established the relevant context leading up to the charged crimes — is inextricably intertwined with the defendant's charged crimes."); *Young v. State*, 122 So. 3d 891, 897 (Fla. 4th DCA 2013) ("The evidence that Young and Jacobs were drug dealers was necessary to fully explain the events that occurred prior to and after the melee in order to understand the shooting itself.").

The victims testified that they knew Perez because they had purchased drugs from Perez. (Doc. 15-4 at 406–07, 480, 489–90, 572–73)  In opening statements and closing argument, the prosecutor referred to the prior drug sales only to explain how the victims knew Perez and why the victims went to Perez's home.  (Docs. 15-4 at 369–70 and 15-5 at 42–43)  Because the collateral crimes evidence was admissible and did not become a feature at trial, the state court did not unreasonably apply *Strickland*.  Ground Two is denied.

**Ground Three and Ground Four**

Perez asserts that trial counsel was ineffective for not investigating and presenting

a "Stand Your Ground" defense.  (Doc. 1 at 8)  ("Ground Three")  Perez contends that Haynes

and Virts had robbed him before and returned to Perez's home at 3:00 A.M. on the night of the

crimes.  (Doc. 1 at 8)  Perez further asserts that trial counsel was ineffective for not investigating

and presenting testimony by Sean Simmons, Jackie Wade, Amanda Millstine, and a neighbor

named "Joe."  (Doc. 1 at 10) ("Ground Four")  Perez contends that the witnesses would have

testified that Haynes and Virts were well known drug abusers, went to "extreme lengths" to get

drugs, and owed Perez money for drugs and would not have asked Perez for more drugs.  (Doc. 1

at 10)  The post-conviction court denied the grounds together as follows (Doc. 15-5 at 253–54):

> The Defendant's [two] claims . . . are entwined and the Court will
> therefore address them together. . . . [T]he Defendant claims his counsel
> was ineffective for failing to "properly investigate and offer alternative
> defense scenario where the record reflects that witnesses Michael James
> Haynes and Titus V[i]rts, after previously robbing the Defendant on
> another occasion return to the Defendant's house at 3 a.m. [ ] with no
> money and approach the Defendant's house even though the State's
> witnesses testified the lights were out and no one answered the phone."
> In short, the Defendant believes counsel to be ineffective for failing to
> investigate and put forth a "Stand Your Ground" defense. . . . [T]he
> Defendant [also] claims his counsel was ineffective for failing to
> investigate potential defense witnesses Sean Simmons, Jackie Wade,
> Amanda Millstine, and neighbor "Joe," who collectively would have
> testified that the "State's witnesses are well-known drug abusers who go
> to extreme lengths to get their drugs, owe the Defendant money so it
> makes little sense that these individuals would come to the Defendant to
> get more drugs 'fronted' as proposed by the State." Together, the
> Defendant claims had counsel "investigated these witnesses and explored
> a possible defense scenario of 'Stand Your Ground' or robbery where
> known drug addicts who owe the Defendant money approach the
> Defendant's home at 3 a.m. [ ] with no money, as stated by witnesses
> Haynes, V[i]rts and Kelly Shumaker, and where witness Haynes testified
> no lights were on at the Defendant's house nor was anyone answering the
> phone, the outcome of the trial could very well have been different."
>
> For the reasons stated below, the Court finds both [g]rounds . . . to be
> without merit. Initially, the Court notes that the Defendant does not set
> forth an alternative set of facts than those presented by the State at trial.
> In other words, the Defendant does not allege that Ms. Shumaker,

Mr. Virts, and Mr. Haynes were in fact attempting to rob him at the time the Defendant shot Ms. Shumaker and shot at Mr. Virts. He merely suggests that counsel should have "explored a possible defense scenario of 'Stand Your Ground'" based on reputation evidence and an alleged uncharged prior criminal act of the victims to support a defense theory that the Defendant was justified in shooting at the victims because he was being robbed. The Court finds this claim to be highly speculative but will nonetheless address it on its merits. *See Johnson v. State*, 921 So. 2d 490, 503–04 (Fla. 2005) (stating that pure speculation cannot form a basis for postconviction relief[)]; *Solorzano v. State*, 25 So. 3d 19, 23 (Fla. 2d DCA 2009).

The Defendant's [the second claim] appears to form the basis of his [first claim]. Therefore, the Court will first address counsel's failure to investigate the named witnesses . . . and then address counsel's failure to explore a Stand Your Ground defense.

## **Ground Four**

Perez asserts that trial counsel was ineffective for not investigating and presenting testimony by Sean Simmons, Jackie Wade, Amanda Millstine, and a neighbor named "Joe." (Doc. 1 at 10)  The post-conviction court denied this ground for the following additional reasons (Doc. 15-5 at 254–59) (state court record citations omitted):

. . . [T]he Defendant alleges that counsel was ineffective for failing to investigate or speak with Mr. Simmons, who, during an interview with Detective Bailey, stated that he knew a man named "Joe" who lives in the immediate area of the shootings, and was a witness to the shootings. The Defendant alleges that he instructed his counsel to seek out "Joe," told him where "Joe" lived, and told him that "Joe" informed Mr. Simmons that he was a witness to the shooting. He alleges that "Joe" is aware the State's witnesses were known drug addicts willing to go to extreme lengths to get the drugs they need. The Defendant also alleges that he instructed his counsel to contact Ms. Wade and Ms. Millstine, who would have verified the State's witnesses were drug abusers who had previously robbed the Defendant. He further alleges that this fact is confirmed by Ms. Shumaker who, in her deposition, stated that she was aware that Mr. Haynes and Mr. Virts had ripped off the Defendant before. The Defendant alleges that he instructed his counsel to further question Mr. Haynes, who in a conversation with the Defendant admitted he had seen Mr. Virts with a pistol before and how he was known to carry one due to the lifestyle he led. The Defendant claims had counsel investigated these witnesses and explored a possible Stand Your Ground defense, the outcome of the trial could very well have been different.

The Court finds counsel was not ineffective for failing to investigate Mr. Simmons, "Joe," Ms. Wade, and Ms. Millstine. First, contrary to the

Defendant's allegations in his motion, Ms. Shumaker does not confirm in her deposition the alleged fact that Mr. Haynes and Mr. Virts had previously robbed or ripped off the Defendant. During Ms. Shumaker's deposition, defense counsel asked, "Even though it's not admissible in court have you heard any rumors of why he shot you?" Ms. Shumaker's response was: "Um, I did hear that [Mr. Virts] and [Mr. Haynes] ripped him off for drugs is what I heard. I don't know if that's true. I haven't seen [Mr. Virts] or [Mr. Haynes] since that night, so —." Ms. Shumaker referenced a rumor she had heard; not a fact of which she had actual knowledge. Accordingly, Ms. Shumaker's deposition does not support the Defendant's theory that Ms. Shumaker, Mr. Virts, and Mr. Haynes had previously "ripped off" the Defendant. Additionally, such speculation would not have been admissible at trial, as indicated by defense counsel while questioning Ms. Shumaker in her deposition.

Second, testimony from Ms. Wade, Ms. Millstine, and "Joe" that "these witnesses" were drug users came out during the Defendant's trial. Indeed, Ms. Shumaker, Mr. Virts, and Mr. Haynes all admitted during the Defendant's trial to being drug users. Additionally, both the State and defense counsel readily admitted during their respective closing arguments that these three individuals were avid drug users. Thus, additional testimony to this effect would have been cumulative and unnecessary given that these three witnesses admitted to such drug use. Moreover, Mr. Virts indicated in his deposition that Ms. Wade was also in the drug business or dealings with the Defendant. As such, she would have been no more credible than any of the State's witnesses, which the Defendant suggests were not credible.

Third, whether or not "Joe" would have been of any benefit to the Defendant is wholly speculative. Detective Michael Bailey indicated in his deposition that Mr. Simmons told Detective Bailey that "Joe" was "a witness to the shooting but he would not come forward[,]" and, that if anyone attempted to approach "Joe," he would retreat and not say anything. Additionally, Mr. Virts testified at trial that when he fled from the alley where he was being shot at, he ran a couple of blocks away to "Joe's" house. Accordingly, although "Joe" may have been a witness to the extent that one of the victims made contact with "Joe" on the night of the shootings, "Joe" was not an eyewitness and would not have been able to provide any evidence or testimony to corroborate the Defendant's theory that the victims were attempting to rob the Defendant.

Fourth, assuming the Defendant is correct in alleging that Ms. Wade and Ms. Millstine would have testified that "these witnesses" had previously robbed the Defendant, this testimony would have had little influence on the jury's decision in light of the other testimony and evidence presented at trial. In other words, had these witnesses testified as the Defendant alleges they would have, there is no reasonable probability that the outcome of the trial would have been different. If in fact "these witnesses" had previously robbed the Defendant, the evidence presented at trial does not support the theory that "these witnesses" were robbing the Defendant on the night of the shootings. Specifically, at trial, the

testimonies of Mr. Virts, Ms. Shumaker, and Mr. Haynes were all
consistent as to the events that occurred on the night of the crimes.
Mr. Virts ran into Ms. Shumaker and Mr. Haynes by chance at a motel
on the night of the crimes. The three drive to a bar together for drinks.
They then leave the bar and Mr. Haynes wants to get cocaine. The three
drive to the alleyway where both the Defendant's home and Mr.
Haynes'[s] apartment are located. Upon arrival, both Ms. Shumaker and
Mr. Virts remain in the truck while Mr. Haynes exits the truck to attempt
to get drugs from the Defendant. Mr. Haynes testified that when he
walked up to and by the Defendant's home, he was not sure if anyone
was there so he crossed the street to a friend's house to try to call the
Defendant.

After the Defendant was gone from the truck for approximately [ten to
twenty] minutes, Mr. Virts exits the truck to look for Mr. Haynes.
Mr. Virts walks up and down the alleyway looking for Mr. Haynes when
he sees the Defendant on his porch. Mr. Virts testified that the Defendant
immediately began accusing Mr. Virts of being the police. Mr. Virts
testified that the Defendant came down off of his porch to confront
Mr. Virts and then went back into his house after threatening Mr. Virts.
Mr. Virts then walked back to the truck where Ms. Shumaker was still
located. The Defendant came back out of his home and, according to
Mr. Virts, was carrying a nickel-plated revolver as he walked to where
Mr. Virts was now standing by the truck. At this point, Ms. Shumaker
exited the truck to see what was going on and to break up an argument
she saw was going on between the Defendant and Mr. Virts. Both
Mr. Virts and Ms. Shumaker attempted to assure the Defendant that
Mr. Virts was not a member of law enforcement nor was he in any way
working with law enforcement. The Defendant told Ms. Shumaker
something about running her mouth and that he never liked her anyway,
then the Defendant shot her in the face. The Defendant shot
Ms. Shumaker a second time after she had fallen face first and was lying
on the ground, and then shot at Mr. Virts a few times. Mr. Virts testified
that he was able to evade being shot by ducking, turning, and running
away. He indicated that he tripped over Ms. Shumaker's legs as he was
attempting to escape gunfire and in doing so scraped his knee. The knee
scrape was corroborated by Detective Brian McDowell.

Mr. Haynes testified that when he exited the truck, he walked by the
Defendant's home where there appeared to be no one home as the
outside lights were off and it looked dark through the curtains. He
testified that he then walked across the street to Mr. Lane's house to use
his phone to call the Defendant. Mr. Haynes testified that he received no
answer when he attempted to call the Defendant so he hung out in
Mr. Lane's house for a little bit. Mr. Haynes and Mr. Lane were inside of
Mr. Lane's house together for approximately [ten to fifteen] minutes
when they heard gunshots. Mr. Haynes and Mr. Lane immediately ran
out front of the house; Mr. Lane was in front. Once outside, Mr. Haynes
and Mr. Lane saw two people coming from the alley and get into a car
parked in front of the Defendant's home; one of those people was the
Defendant. The car, with the Defendant and another individual inside,

backed out of the alley adjoining the Defendant's home and drove away. Mr. Lane testified that he saw a chrome revolver in the Defendant's hand at the time the Defendant was getting into the car. He indicated that he had seen the Defendant with that specific gun on previous occasions.

Finally, with respect to the Defendant's allegation that he instructed his counsel to "further question [Mr. Haynes] who in a conversation with the Defendant admitted he had seen [Mr. Virts] with a pistol before and how he was known to carry one due to the lifestyle he led," the Court finds that counsel was not ineffective. Specifically, on cross-examination of Mr. Virts, the following exchange took place between defense counsel and Mr. Virts:

| [Trial counsel]: | And I believe that you've indicated that this gun that Mr. Perez was shooting was a revolver, correct? |
|---|---|
| [Virts]: | Yes, sir. |
| [Trial counsel]: | Are you able to describe it in any other fashion? |
| [Virts]: | It was nickel-plated. |
| [Trial counsel]: | Now, do you know about guns, do you not? |
| [Virts]: | Not so much. |
| [Trial counsel]: | Do you use guns? |
| [Virts]: | No, sir. |
| [Trial counsel]: | Isn't it true that you possessed a gun? |
| [Virts]: | No, sir. |
| [Trial counsel]: | Sir, were you planning to steal anything from Mr. Perez? |
| [Virts]: | No, sir. |
| . . . | |
| [Trial counsel]: | Isn't it true, sir, that you are trying to frame Mr. Perez for this shooting? |
| [Virts]: | No, sir. |

Then, on re-direct examination, the following exchange took place between the State and Mr. Virts:

| | |
|---|---|
| [Prosecutor]: | Counsel suggested that you framed — you wanted to frame Mr. Perez? |
| [Virts]: | For what? |
| [Prosecutor]: | I don't know. I was going to ask you. Any reason you can think of you would want to frame Mr. Perez? |
| [Virts]: | None. |
| [Prosecutor]: | Okay. You didn't have any bad blood with him, did you? |
| [Virts]: | No, sir. |
| [Prosecutor]: | Okay. No altercations with Mr. Perez prior to this evening that we should know about, is there? |
| [Virts]: | Never. |

On direct examination, the State asked Ms. Shumaker if she knew why the Defendant had shot her. She indicated that it was over an argument the Defendant and Mr. Virts were having. The State followed up by asking if Ms. Shumaker caused any threat to the Defendant or if she had a weapon in her hand, to which Ms. Shumaker responded, "Absolutely not." Testimony of Mr. Virts and Ms. Shumaker makes clear that neither were posing a threat to the Defendant at the time they were shot at. Moreover, Mr. Haynes was not present at the time of the shootings, hence he was not posing a threat to the Defendant at the time of the shootings.

In sum, the evidence presented at trial refutes any theory by the Defendant that Ms. Shumaker, Mr. Virts, and Mr. Haynes were attempting to rob the Defendant on the night of the shootings. Furthermore, based on the corroborating testimony of the State's four eyewitnesses, testimony from Ms. Wade and Ms. Millstine that "these witnesses" had previously robbed the Defendant would not have supported the Defendant's theory that "these witnesses" were attempting to rob the Defendant on the night in question. For all of the aforementioned reasons, the Court finds that the Defendant was not prejudiced by counsel's failure to investigate Mr. Simmons, "Joe," Ms. Wade, and Ms. Millstine. [The claim] is therefore denied.

Because Perez presented neither affidavits nor deposition testimony by Sean Simmons, Jackie Wade, Amanda Millstine, and the neighbor named "Joe" to show that the witnesses would have testified in the manner that he contended, his claim was speculative.  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit."); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").

Haynes, Virts, and Shumaker testified that they used drugs and went to Perez's home to get drugs.  (Doc. 15-4 at 407–08, 480, 484, 489–90, 570, 573, 575–76, 590–91)  During closing argument, trial counsel told the jury that Virts and Shumaker were "regular drug user[s]." (Doc. 15-5 at 88, 92)  The prosecution agreed and told the jury that Haynes, Virts, and Shumaker used drugs and went to Perez's home to buy drugs.  (Doc. 15-5 at 43–45, 54)  Testimony by additional witnesses that the victims were drug abusers was cumulative.  *Ledford v. Warden, Ga. Diag and Class'n Prison*, 818 F.3d 600, 649 (11th Cir. 2016) ("[B]ecause Ledford's post-conviction evidence is 'merely cumulative of evidence already presented at trial,' he 'cannot satisfy the prejudice prong of the *Strickland* test.'") (quoting *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011)).

On cross-examination, trial counsel asked Virts whether he had a gun and planned to rob Perez on the night of the crimes and Virts denied it.  (Doc. 15-4 at 452–53)  On re-direct examination, Virts denied having "bad blood" with Perez or ever having an "altercation" with Perez before the crimes.  (Doc. 15-4 at 456)  Shumaker denied having a weapon or threatening

Perez.  (Doc. 15-4 at 509)  Both victims and Haynes testified that they were going to Perez's

home to buy or get drugs — not rob him.  (Doc. 15-4 at 407–08, 484, 570, 575–76, 590–91)

Perez did not testify to substantiate a claim of self-defense.  Because no evidence at trial tended

to show that the victims intended to rob Perez on the night of the crimes, the trial court would

have excluded evidence either that the victims had robbed Perez in the past or that Virts regularly

carried a gun.  *Farrell v. State*, 273 So. 3d 43, 46 (Fla. 4th DCA 2019) ("A defendant asserting

self-defense lays the predicate for admission of evidence of prior specific acts of violence by the

victim by presenting evidence that: (1) He knew about the prior violent act at the time he

committed the crime against the victim; and (2) the victim made some overt act at or about the

time of the crime which may be reasonably regarded as placing the defendant in imminent

danger.").  Trial counsel was not ineffective and the state court did not unreasonably apply

*Strickland*.  *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n

attorney will not be held to have performed deficiently for failing to perform a futile act, one that

would not have gotten his client any relief.").  Ground Four is denied.

### Ground Three

Perez asserts that trial counsel was ineffective for not investigating and presenting

a "Stand Your Ground" defense.  (Doc. 1 at 8)  The post-conviction court denied this ground for

the following additional reasons (Doc. 15-5 at 259–61) (state court record citations omitted):

> . . . [T]he Court will now turn to the issue of whether counsel was
> ineffective for failing to pursue a defense based on Florida's "Stand Your
> Ground" law. As just discussed, none of the witnesses the Defendant
> alleges would have supported the Defendant's theory that he was being
> robbed by the victims on the night of the shootings would have in fact
> supported such a theory. . . .

> The defense's theory at the Defendant's trial was that the Defendant was
> not at his residence at the time the crimes occurred. Indeed, the
> Defendant concedes in his motion that it was his counsel's trial strategy
> to go forward with the theory that the Defendant was not present at the

time and place the crimes occurred. Had counsel offered an alternative theory that the Defendant was home at the time of the crimes, and that the victims were attempting to rob the Defendant when the Defendant stood his ground and acted in self-defense by shooting the victims, this theory would have directly contradicted the theory that the Defendant was not even around when the shootings occurred. To put forth both theories when they are at total odds with each other would have undermined the entire defense. A jury would have easily convicted the Defendant if the defense offered wholly contradictory theories at trial. Accordingly, the Court finds that counsel was not deficient and the Defendant was not prejudiced.

To the extent the Defendant is claiming that his counsel was deficient for failing to utilize the alternative theory of Stand Your Ground in lieu of pursuing a defense based on the Defendant not being present, the Court finds this claim is also without merit. As the Defendant concedes in his motion, his counsel's trial strategy was to argue that the Defendant was not present at the time and place where the shootings occurred. The Defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hurst v. State*, 18 So. 3d 975, 996 (Fla. 2009) (quoting *Strickland*, 466 U.S. at 689). "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

The Court finds that defense counsel's trial strategy was reasonable under the circumstances. The Stand Your Ground law is codified in chapter 776, Florida Statutes (2011). Section 776.032(1) grants criminal immunity to persons using force as permitted in [S]ections 776.012, 776.013, or 776.031. In essence, [S]ections 776.012, 776.013, and 776.031 authorize the use of deadly force without first retreating when a defendant reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.

The Court finds that a defense of Stand Your Ground would not have succeeded for the Defendant in light of the evidence presented by the State, and considering the Defendant's post-*Miranda* statements claiming that he was nowhere near the scene of the crime at the relevant time. Had the Defendant presented a Stand Your Ground defense, he would have had to admit to shooting the victims. Additionally, the Defendant's credibility would have been severely attacked by his post-*Miranda* statements that he was nowhere near the crime scene and was with a stripper at the time of the shootings. Moreover, Tashara Mintze testified at trial that she was living at the Defendant's residence at the time of the shootings; that the Defendant and [she] were both home earlier in the evening but the Defendant had left the residence for "Baby Dolls" well before the time of the shootings and she did not see the Defendant again until the following day; and, that she and another friend,

22

who were the only persons [at] home [ ] that night, had left the residence five or six minutes prior to the shootings to walk to a nearby store.

Evidence presented by the State demonstrated that after the Defendant and Mr. Virts got into an oral argument, the Defendant went into his house to retrieve a gun, and then returned to the alley and shot Ms. Shumaker and shot at Mr. Virts. The Court also points out that Ms. Shumaker was shot twice, once in the back of the head after she had already fallen to the ground and was not moving. Evidence presented by the State also showed that Mr. Virts was fleeing when the Defendant fired the gun. Thus, the Defendant left the confrontation (and any alleged initial threat), then advanced back outside after he was no longer in any alleged danger and reengaged Mr. Virts and Ms. Shumaker with deadly force.

Given that the State's evidence showed that the victims were lawfully in an alley just down from the Defendant's home, were not posing a threat to the Defendant, one of the victims was shot a second time in the back of the head after she was incapacitated by the first shot, and the other victim was fleeing when the Defendant fired the gun at him, any perceived necessity for the use of deadly force by the Defendant would not have been reasonable. *See* § 776.012, Fla. Stat. Instead, defense counsel utilized a trial strategy of misidentification because of the credibility shortcomings of the victims and eyewitnesses, and because of the Defendant's post-*Miranda* statements that he was nowhere near the scene of the crime at the time of the shootings. Accordingly, the Court cannot conclude that such a trial strategy was unreasonable or deficient. The Court finds that counsel's decision not to pursue a Stand Your Ground defense to be a strategic decision and reasonable under the circumstances of this case. *See Panagiotakis v. State*, 619 So. 2d 345 (Fla. 2d DCA 1993) (stating that counsel cannot be said to have been ineffective for failing to investigate or pursue a meritless defense). Accordingly, the Defendant has failed to establish any prejudice from counsel's failure to pursue a Stand Your Ground defense.

A "Stand Your Ground" defense — or self-defense — contradicted Perez's identity defense presented at trial. A defendant concedes that he intentionally committed the crime by asserting self-defense, while a defendant claims that he did not commit the crime by asserting an identity defense. *Dickerson v. State*, 204 So. 3d 544, 546 (Fla. 5th DCA 2016) ("Claims of self defense and defense of another involve an admission and avoidance. By arguing without qualification that he . . . acted in self-defense, Mr. Brown necessarily conceded that [he] intentionally caused the victim's death.") (citations and quotations omitted). Consequently, the

state court did not unreasonably conclude that trial counsel could not have presented self-defense as an alternative defense. *Hunt v. Comm'r, Ala. Dep't Corrs.*, 666 F.3d 708, 727 (11th Cir. 2012) ("Having chosen a reasonable defense theory . . . Hunt's attorneys were not required to pursue an intoxication defense as well. Such a defense would have been inconsistent with counsel's strategy of denying Hunt's guilt."). *Accord Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000) ("Counsel is not required to present every nonfrivolous defense . . . . Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others.").

After waiving his constitutional rights, Perez told police that he was with a stripper at the time of the shooting. (Doc. 15-5 at 584–86, 592–93) A woman who lived with Perez testified that Perez left home around 6:00 P.M. or 7:00 P.M. to go to a strip club. (Doc. 15-5 at 767–69) The woman and a friend went to the store around 3:00 A.M. and heard the gunshots five or six minutes after they left. (Doc. 15-5 at 775–76) The woman did not see Perez until the next day. (Doc. 15-5 at 779–80) Both Perez's own statements to police and the woman's testimony would have defeated a claim of self-defense. Therefore, the state court did not unreasonably conclude that presenting self-defense — in lieu of an identity defense — was not reasonable strategy either. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) ("[A] reasonable attorney could have concluded that a theory of self-defense was inconsistent with Petitioner's own description of the killing. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.") (citations and quotations omitted).

Virts testified that he and Perez exchanged words at Perez's front door.  (Doc. 15-4 at 410–13)  Perez went inside his home to get a gun.  (Doc. 15-4 at 413, 417)  Virts returned to the car to warn Shumaker.  (Doc. 15-4 at 413–15)  Perez followed Virts out to the car, shot Shumaker in the face and the back of the head, and fired his gun at Virts.  (Doc. 15-4 at 415–17, 422–34)  Because Virts had left Perez's home to go to the car and was no longer any threat to Perez, Perez was not entitled to use deadly force.  *Pressley v. State*, 395 So. 2d 1175, 1177 (Fla. 3d DCA 1981) ("[A] person may not use violence upon his assailant, after the assailant is no longer a threat and all danger is clearly past, and thereby claim to be acting in self-defense.").  Trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*. *Hunt*, 666 F.3d at 727 ("Counsel's failure to request an intoxication instruction is further justified by the implausibility, on this record, of an intoxication defense.").  Ground Three is denied.

**<u>Ground Five</u>**

Perez contends that the prosecution's witnesses committed perjury by testifying that the prosecutor did not give them any benefit in exchange for their testimony.  (Doc. 1 at 17)  Perez asserts that trial counsel was ineffective for not investigating these witnesses.  (Doc. 1 at 17)  The post-conviction court denied the ground as follows (Doc. 15-5 at 261–62) (state court record citations omitted):

> The Defendant claims his counsel was ineffective for failing to properly investigate a perjury issue where the State's witnesses claimed they were not given anything in exchange for their testimony against the Defendant. The Defendant alleges that both the State and defense counsel questioned witnesses Mr. Virts, Ms. Shumaker, and Mr. Haynes about whether or not they had received any promises, deals, or assurances, for their testimony; and, all three denied any such benefits for their testimony. The Defendant claims that because all of these witnesses admitted to buying drugs from the Defendant, they would have had to be charged for those crimes. Thus, the Defendant claims the fact that they were not charged with any crimes essentially means their failure to be charged was the "*quid pro quo*" benefit received by these witnesses for their testimony. The Defendant further claims that,

accordingly, these witnesses committed perjury by testifying to not receiving any benefits for their testimony.

Although the Defendant's argument is creative, it is without merit. The State's decision not to pursue charges against these witnesses for buying drugs from the Defendant does not require that these witnesses were promised anything in exchange for their testimony.

Mr. Haynes testified consistently in his deposition and at trial that he did not receive anything in exchange for his testimony in the instant case. During the course of the Defendant's trial, Mr. Virts was never questioned as to whether or not he had received anything from the State in exchange for his testimony. However, during his deposition, Mr. Virts stated under oath that he had been arrested on unrelated charges since the shooting; but, that his charges had been dropped. When defense counsel questioned Mr. Virts during his deposition as to whether his cooperation in this case had anything to do with his charges being dropped, Mr. Virts answered in the negative. As the statements given by Mr. Virts at his deposition were given under oath, it is reasonable to assume that he would have testified consistent with his deposition during trial. As for Ms. Shumaker, she indicated during her deposition that she had no pending charges at that time. During trial, Ms. Shumaker was never questioned about whether or not she received any benefit from the State in exchange for her testimony. However, it is a fair assumption that because she did not have any pending charges, she had not received any benefit from the State for giving her testimony. Accordingly, the record reflects that counsel did investigate whether or not these witnesses received anything in exchange for their cooperation in the instant case. Therefore, counsel was not deficient.

To the extent that the Defendant claims that these witnesses received a "benefit" by not being charged in connection with their prior cocaine purchases from the Defendant, although this argument is creative, it is unconvincing and speculative at best. The Defendant offers nothing more than speculation in support of his position that these witnesses perjured themselves when they stated under oath that they received nothing in exchange for their testimony. Pure speculation cannot form the basis for postconviction relief. *Johnson*, 921 So. 2d at 503–04; *Solorzano*, 25 So. 3d at 23. For all of the aforementioned reasons, this claim is denied.

Perez presented neither affidavits nor other evidence to show that the prosecution did not prosecute Virts, Shumaker, and Hayes for purchasing drugs in exchange for their cooperation (Doc. 15-5 at 243), and his claim was speculative. *Ashimi*, 932 F.2d at 650; *Buckelew*, 575 F.2d at 521. *Accord Hunt*, 666 F.3d at 723 ("'Absent a showing that real impeachment evidence was available and could have been, but was not, pursued at trial, [the petitioner] cannot establish that

the cross conducted by his attorneys fell outside the range of professionally competent assistance.'") (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001)).

At trial, Haynes testified that no one had promised or offered him any benefit in exchange for his testimony.  (Doc. 15-4 at 593–94, 607–08)  Haynes explained, "I'm just doing this for Kellie [Shumaker] really."  (Doc. 15-4 at 609)  In his deposition, Virts testified that, after the shooting, he was arrested for driving with a suspended license and felony battery but the prosecution dropped the charges.  (Doc. 15-5 at 563)  Virts denied that the prosecution dropped the charges in exchange for his testimony in this case.  (Doc. 15-5 at 563)  In her deposition, Shumaker testified that she had been convicted of a crime but did not have any pending cases.  (Doc. 15-5 at 305–06)  Because trial counsel investigated whether the witnesses received any benefit in exchange for their testimony, the state court did not unreasonably conclude that the record refuted the claim.  Ground Five is denied.

**Ground Six**

Perez asserts that trial counsel was ineffective for representing him with an impermissible conflict of interest.  (Doc. 1 at 19)  Perez contends that trial counsel made inappropriate and biased comments which demonstrated the conflict.  (Doc. 1 at 19)  The post-conviction court denied the ground as follows (Doc. 15-5 at 262–63) (state court record citations omitted):

> The Defendant claims his counsel was ineffective because counsel made "inappropriate, biased comments that when taken [cumulatively] collaborate the Defendant's contention that [trial counsel] was disenchanted with [his] client, he made tactless innuendos [ ] about [his client] being of a lower inferior caste, tainting [trial counsel's] attitude and performance creating an actual conflict of interest." The Defendant alleges that his counsel's bias towards him is evident from the deposition of Detective Bailey wherein counsel "states snidely how unsurprised everyone should be that the Defendant's alibi witness did not [corroborate] the Defendant's story[,]" and, when counsel stated that he had an upcoming bond hearing just to get the Defendant off of his back because the Defendant has no money. The Defendant claims these comments demonstrate his counsel's lack of respect for the Defendant and absence of professionalism.

To establish a claim of ineffective assistance of counsel based on an alleged conflict of interest, a defendant must show "both that there was an actual conflict of interest and that the conflict adversely affected counsel's performance." *Derrick v. State*, 983 So. 2d 443, 454 (Fla. 2008). Trial counsel suffers from an actual conflict of interest when he "actively represents conflicting interests." *Sliney v. State*, 944 So. 2d 270, 279 (Fla. 2006)[ (]quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)[)]. Furthermore, a defendant must demonstrate he was unaware of the conflict at the time of trial. *Hannon v. State*, 941 So. 2d 1109, 1141 (Fla. 2006) ("[T]he facts that formed the basis for this alleged conflict of interest were known to [Defendant] at the time of his trial and, therefore, could have been and should have been presented on direct appeal[.]") (citing *Thompson v. State*, 759 So. 2d 650, 661 (Fla. 2000)[;] *Jackson v. Dugger*, 633 So. 2d 1051, 1055 (Fla. 1993)).

The Court finds the Defendant's claim is without merit. The Defendant has failed to show that counsel's comments, albeit seemingly unprofessional, adversely affected his performance. In fact, the record reflects that counsel zealously argued the Defendant's bond motion. Second, it was Detective Bailey who made a comment about not being surprised the Defendant's alibi did not check out; not defense counsel. Additionally, the Defendant has failed to demonstrate an actual conflict by identifying record evidence showing that his interests were compromised for the benefit of someone else. *See Hunter v. State*, 817 So. 2d 786, 792 (Fla. 2002). Moreover, the Defendant's motion offers nothing other than speculation to show that the alleged conflict adversely affected counsel's performance. Pure speculation cannot form the basis for postconviction relief. *Johnson*, 921 So. 2d at 503–04; *Solorzano*, 25 So. 3d at 23. For all of the aforementioned reasons, this claim is denied.

Perez alleged that trial counsel acted unprofessionally and disrespectful toward him. Perez did not allege that trial counsel actively represented conflicting interests. *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."); *Tuomi v. Sec'y, Fla. Dep't Corrs.*, 980 F.3d 787, 796 (11th Cir. 2020) ("To show an actual conflict of interest, a habeas petitioner must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action . . . that favors an interest in competition with that of the

defendant.") (citation and quotations omitted).  *Accord Mickens v. Taylor*, 535 U.S. 162, 175–76 (2002) (leaving open the question whether *Sullivan* extends to other types of attorney ethical conflicts).

Also, at his deposition, the detective — not trial counsel — made the disparaging comment about the alibi defense.  (Doc. 15-5 at 569)  Trial counsel filed a written motion for reduction of bond, cross-examined the prosecution's witness at the bond hearing, presented argument, and secured Perez bond on one of the two charges.  (Docs. 15-2 at 60–61 and 15-5 at 615–18, 621–23)  Because Perez did not allege a reasonable and plausible alternative defense strategy that trial counsel did not pursue because of an actual conflict, the state court did not unreasonably deny the claim.  *Tuomi*, 980 F.3d at 796 ("To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense.") (citation and quotations omitted).  Ground Six is denied.

## Ground Seven

Perez contends that the prosecutor told the jury during closing argument that Perez had a "prior cocaine conviction."  (Doc. 1 at 21)  Perez asserts that the comment was false, and trial counsel was ineffective for not objecting.  (Doc. 1 at 21)  The post-conviction court denied the ground as follows (Doc. 15-5 at 264) (state court record citations omitted):

> The Defendant claims his counsel was ineffective for failing to object during the State's closing argument when the State commented "about the Defendant having a prior cocaine conviction which is factually untrue and was prejudicial to the Defendant." The Defendant's claim . . . is without merit. The Court notes that [absent from] the State's closing argument is [ ] any reference to a prior conviction of the Defendant's for cocaine. Rather, the State made such a comment after the jury had reached its verdict and had been excused.

> The State commented on the Defendant's prior conviction for cocaine in
> the context of whether the Defendant was entitled to have a pre-sentence
> investigation [ ] report conducted. The State mentioned a prior
> conviction because a PSI is mandatory only for adult first-time felony
> offenders and felony offenders under the age of eighteen years. *See*
> Fla. R. Crim. P. 3.170 (2016). It is apparent that the State was attempting
> to argue that the Defendant was not mandatorily entitled to a PSI. The
> State's comment in this context, whether factually correct or not, did not
> prejudice the Defendant. Counsel indicated that the Defendant preferred
> to be sentenced on the date of the trial, thereby waiving a PSI and
> making the issue of whether or not the Defendant was entitled to a PSI
> moot. As Defendant was not prejudiced, this claim is denied.

The prosecutor did not refer to Perez's "prior cocaine conviction" during closing

argument.  (Doc. 15-5 at 34–79, 103–18)  The prosecutor referred to his prior conviction for

cocaine possession after the trial court rendered the verdict, excused the jury, and asked whether

a presentence investigation was appropriate.  (Doc. 15-5 at 153–59)  Because the record refuted

Perez's claim, the state court did not unreasonably deny the claim.  Ground Seven is denied.

**<u>Ground Eight</u>**

Perez asserts that trial counsel was ineffective for not objecting to inflammatory evidence

including a photograph of a weapon.  (Doc. 1 at 23)  Perez contends that the weapon depicted in

the photograph was not the weapon used in the crime.  (Doc. 1 at 23)  The post-conviction court

denied the ground as follows (Doc. 15-5 at 264–66) (state court record citations omitted):

> The Defendant claims his counsel was ineffective for failing to "object to
> inappropriate physical evidence and the entering into evidence
> inflammatory photos of a weapon that was not [the] actual weapon used
> [thereby] exposing the Defendant to [bias] where [the] irrelevant photos
> were being used simply for shock value." The Defendant alleges that the
> State introduced photos depicting a gun that was not used in the
> commission of the crimes charged. He further alleges that this was
> inadmissible evidence which counsel should have objected to. The
> Defendant maintains that the introduction of the gun photographs were
> introduced "for shock value to prejudice the jury with an inflammatory
> photo."
>
> The Defendant seems to confuse the notion that evidence of firearms not
> linked to the crimes charged are irrelevant with the proper use of
> a demonstrative exhibit. In all of the cases cited by the Defendant, the
> State introduced firearms and photographs of firearms that belonged to

the respective defendants but that were not linked to the crimes charged. *See O'Connor v. State*, 835 So. 2d 1226 (Fla. 4th DCA 2003) (concluding that photographs of a shotgun and a bullet proof vest found at the defendant's home during a police search were not relevant to the charged crimes of murder and armed robbery, and were thus inadmissible, where the murder was committed with a handgun, not a shotgun, and nothing in evidence connected the shotgun or the bullet proof vest to the murder); *Moore v. State*, 1 So. 3d 1177 (Fla. 5th DCA 2009) (finding photographs of firearms stored in the defendant's home irrelevant and inadmissible where none of the found firearms could have fired the caliber of projectile recovered from the victim); *Downs v. State*, 65 So. 3d 594 (Fla. 4th DCA 2011) (testimony about gun found in apartment on night of shooting was not relevant to charged crime of aggravated battery with a firearm, and was thus inadmissible; gun was unrelated to the charged crime, and State did not demonstrate any connection of gun to the defendant, since it was found in bedroom of apartment and the defendant slept in the living room of the apartment, and the found gun was not the type of gun used in the shooting). Those cases cited by the Defendant all relied on the general rule that where the evidence at trial does not link a seized gun to the crime charged, the gun is inadmissible in evidence. In other words, those cases stand for the notion that a gun different than the one used in a crime is not relevant to prove that the crime occurred.

The cases cited by the Defendant are distinguishable from the Defendant's case in that the gun depicted in the photographs introduced in the Defendant's case was the type of gun used in the crimes charged. There was no gun seized from the Defendant in relation to the above-styled case. Hence, the State did not introduce unrelated guns owned by the Defendant or found in his residence to prove that the Defendant committed the crimes charged. Rather, evidence at trial linked the Defendant to the type of gun used in the crimes charged (and the type of gun depicted in the photographs introduced into evidence at trial). Specifically, Mr. Lane testified that he saw the Defendant get into a car and leave the crime scene with a chrome revolver in the Defendant's hand. Mr. Lane also testified that he has seen the Defendant with this same revolver before. Detective Bailey testified that the fact that there were no spent shell casings at the crime scene lends itself to the inference that the type of weapon fired was a revolver and not a pistol. Additionally, the bullets recovered from the crime scene were determined to have likely come from a revolver.

The State merely used the photographs of a gun as demonstrative exhibits of the type of gun used in the crimes charged to demonstrate a couple of things to the jury. First, the State wanted to show that the type of gun seen on the Defendant at the time of the crimes charged (and seen on the Defendant on prior occasions) has characteristics which make it more easily identifiable. Specifically, the demonstrative exhibits were utilized to assist the State's expert [to] explain to the jury the difference between a pistol and revolver. This difference was used to give credibility to Mr. Virt's testimony that he saw the bullets in the

gun's chamber, as you would in revolver. Second, the State utilized the demonstrative exhibits to demonstrate to the jury that the Defendant had the necessary *mens rea* for attempted murder because the type of gun used in the crimes charged was a strong and powerful gun.

In sum, evidence at the Defendant's trial connected the type of gun introduced at trial and the type of gun depicted in the photographs to the Defendant and the crime charged. Thus, use of the demonstrative aid was proper and any objection by defense counsel would have been overruled. *See, e.g.*, *Walker v. State*, 82 So. 3d 115 (Fla. 4th DCA 2011) (finding that trial court did not abuse its discretion in permitting the state to use a firearm as a demonstrative aid at trial, even though it was not identical to the one used to commit the crimes; firearm used by the State as a demonstrative aid was similar enough to the weapon that the witness had testified was used in the crimes, demonstrative aid was relevant to the issues in case). For all of the aforementioned reasons, the Court finds that counsel was not deficient. Therefore, this ground is denied.

Whether the photograph of the revolver was admissible is an issue of state evidentiary law, and the state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. *Accord Harris v. State*, 843 So. 2d 856, 863 (Fla. 2003) ("Demonstrative evidence is admissible only when it is relevant to the issues in the case. . . . [I]t is essential, in every case where demonstrative evidence is offered, that the object or thing offered for the jury to see be first shown to be the object in issue and that it is in substantially the same condition as at the pertinent time, or that it is such a reasonably exact reproduction or replica of the object involved that when viewed by the jury it causes them to see substantially the same object as the original.").

A forensic analyst at the police laboratory examined projectiles recovered from the crime scene and opined that the projectiles came from a Smith & Wesson or Taurus 0.44-caliber revolver. (Doc. 15-4 at 746–47) Virts testified that Perez pointed a nickel-plated revolver at him. (Doc. 15-4 at 418, 452) Virts was able to see the barrel of the gun and the bullets loaded in the barrel. (Doc. 15-4 at 418) A neighbor saw Perez flee the crime scene with a revolver in his

hand.  (Doc. 15-4 at 617–18)  The neighbor had seen Perez with the revolver before.  (Doc. 15-4 at 617–18)

The photographs depicted a Smith & Wesson 0.44-caliber revolver.  (Doc. 15-3 at 68, 70, 72)  The revolver depicted in the photographs was the same type of revolver used in the crime and was relevant to issues in the case.  The forensic analyst used the photographs to explain to the jury how bullets are loaded in and expended from the revolver and why a person could see the bullets if the gun was pointed at him.  (Doc. 15-4 at 748–53)  Also, the prosecution had to prove that Perez discharged the firearm with the premeditated intent to kill.  (Doc. 15-5 at 121–24)  A detective described the gun in the photographs as "big and powerful" and "one of the strongest, most powerful handguns [ ] made."  (Doc. 15-4 at 714)  Consequently, an objection to the photographs would not have succeeded, and the state court did not unreasonably apply *Strickland*.  *McKenney v. State*, 967 So. 2d 951, 957 (Fla. 3d DCA 2007) ("[T]he AK-47 was relevant to the issue of eyewitness identification and to an understanding of the crime scene. There is no evidence or assertion that the AK-47 used for the demonstration was not similar (if not identical) to the murder weapon.") (citation omitted); *Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").  Ground Eight is denied.

**<u>Ground Nine</u>**

Perez contends that the jury instruction for attempted murder incorrectly used the conjunctive phrase "and/or" when referring to the names of the victims.  (Doc. 1 at 25)  Perez asserts that appellate counsel was ineffective for not raising the issue on direct appeal as fundamental error.  (Doc. 1 at 25–26)  Perez raised the claim in his petition alleging ineffective assistance of appellate counsel and the state appellate court denied the claim in an unelaborated

order.  (Doc. 15-6 at 10–12, 96)  The unelaborated order is an adjudication on the merits owed

deference under Section 2254(d).  *Richter*, 562 U.S. at 99.

      *Strickland* applies to ineffective assistance of appellate counsel claims.  *Smith v. Robbins*,

528 U.S. 259, 285–86 (2000).  Because trial counsel did not object to the conjunctive phrase

"and/or" in the jury instructions (Doc. 15-5 at 10–32, 152–53), appellate counsel was ineffective

only if the instruction was fundamentally erroneous.  *Pinkney*, 876 F.3d at 1296–97.  By denying

the claim in an unelaborated decision, the state court implicitly concluded that the instruction

was not fundamentally erroneous.  *Pinkney*, 876 F.3d at 1296–97.  Fundamental error is an issue

of state law, and a state court's determination of state law receives deference in federal court.

*Pinkney*, 876 F.3d at 1297–99.

      The Florida standard jury instruction for "Introduction to Attempted Homicide" provides

that a single instruction may be used for more than one crime.  Fla. Std. Jury Instr. (Crim.) 6.1.

The trial court initially instructed (Doc. 15-5 at 118–19) (bolding added):

> Intro[duction] to attempted homicide. In this case Jason Perez is accused
> of two counts of attempted murder in the first degree. Attempted murder
> in the first degree includes the lesser crimes of attempted murder in the
> second degree, aggravated battery, and aggravated assault, all of which
> are unlawful.
>
> An attempted killing that is excusable or was committed by the use of
> justifiable deadly force is lawful. If you find there was an attempted
> killing of Kellie Shumaker **and/or** Titus Virts by Jason Perez, you will
> then consider the circumstances surrounding the attempted killing in
> deciding if it was attempted murder in the first degree or attempted
> murder in the second degree, aggravated battery, or aggravated assault or
> whether the attempted killing was excusable or resulted from justifiable
> use of deadly force.

Next, the trial court instructed the jury on attempted first degree murder and the lesser offenses

separately for each victim.  (Doc. 15-5 at 120–30)  Also, the trial court gave the jury a two-page

jury verdict form — one page for each victim.  (Docs. 15-2 at 120–21 and 15-5 at 137–41)  The

trial court further instructed (Doc. 15-5 at 141–42):

> . . . [A] separate crime is charged in each count of the Information or
> charging document. And although they have been tried together, each
> crime and the evidence applicable to it must be considered separately and
> a separate verdict returned as to each. A finding of guilty or not guilty as
> to one crime must not affect your verdict as to the other crime charged.

The trial court instructed the jury to consider Perez's guilt for two different crimes against two different victims. Evidence at trial proved that Perez attempted to murder each victim. Perez claimed that he did not commit either crime. (Doc. 15-5 at 80–103) Because the totality of the circumstances showed that the trial court's use of the "and/or" language between the names of the victims in the "Introduction to Attempted Homicide" instruction was not fundamentally erroneous, the state court did not unreasonably apply *Strickland*. *Croom v. State*, 36 So. 3d 707, 710 (Fla. 1st DCA 2010) ("Although . . . courts must analyze the specific facts of a case to determine if the totality of the circumstances demonstrate fundamental error, it is worth noting that a majority of the courts charged with deciding the specific issue of whether it is fundamental error to include the 'and/or' conjunction between the names of victims in a jury instruction have ruled it is not."); *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Ground Nine is denied.

## Ground Ten

Perez contends that the forcible felony jury instruction incorrectly did not include aggravated battery, aggravated assault, or the sale and delivery of cocaine. (Doc. 1 at 27) Perez asserts that appellate counsel was ineffective for not raising the issue on direct appeal as fundamental error. (Doc. 1 at 27–28)

Perez raised this claim in his petition alleging ineffective assistance of appellate counsel and the state appellate court denied the claim in an unelaborated order. (Doc. 15-6 at 13–15, 96) The unelaborated order is an adjudication on the merits owed deference under Section 2254(d).

*Richter*, 562 U.S. at 99.  Because trial counsel did not request a forcible felony instruction with aggravated battery, aggravated assault, or the sale and delivery of cocaine (Doc. 15-5 at 10–32), appellate counsel was ineffective only if the absence of the instruction was fundamentally erroneous.  *Pinkney*, 876 F.3d at 1296–97.  By denying the claim in an unelaborated decision, the state court implicitly concluded that the absence of the instruction was not fundamentally erroneous.  *Pinkney*, 876 F.3d at 1296–97.  Fundamental error is an issue of state law, and a state court's determination of state law receives deference in a federal court. *Pinkney*, 876 F.3d at 1297–99.

A defendant's commission of a forcible felony generally defeats a claim of self-defense. Fla. Stat. § 776.041.  "[F]or the forcible-felony instruction to apply, there must be an independent forcible felony other than the one which the defendant claims he or she committed in self-defense."  *Martinez v. State*, 981 So. 2d 449, 454 (Fla. 2008).  *Accord Hawk v. State*, 902 So. 2d 331, 333 (Fla. 5th DCA 2005) ("[T]he forcible felony instruction is given in situations where the accused is charged with at least two criminal acts, the act for which the accused is claiming self-defense as well as a separate forcible felony.") (citation and quotations omitted). Perez did not assert self-defense at trial, and the trial court did not instruct the jury on self-defense.  (Doc. 15-5 at 118–45)  Consequently, the record refutes the claim, the absence of the instruction was not fundamentally erroneous, and the state court did not unreasonably apply *Strickland*.  Ground Ten is denied.

**<u>Ground Eleven</u>**

Perez contends that the trial court did not instruct the jury on attempted aggravated battery as a lesser included offense of attempted first-degree murder or attempted second-degree

murder.  (Doc. 1 at 29)  Perez asserts that appellate counsel was ineffective for not raising the

issue on direct appeal as fundamental error.  (Doc. 1 at 29–30)

Perez raised this claim in his petition alleging ineffective assistance of appellate counsel

and the state appellate court denied the claim in an unelaborated order.  (Doc. 15-6 at 16–17, 96)

The unelaborated order is an adjudication on the merits owed deference under Section 2254(d).

*Richter*, 562 U.S. at 99.  Because trial counsel did not request an attempted aggravated battery

instruction (Docs. 15-4 at 526–27 and 15-5 at 13–15), appellate counsel was ineffective only if

the absence of the lesser included offense instruction was fundamentally erroneous.  *Pinkney*,

876 F.3d at 1296–97.  By denying the claim in an unelaborated decision, the state court

implicitly concluded that the instruction was not fundamentally erroneous.  *Pinkney*, 876 F.3d

at 1296–97.  Fundamental error is an issue of state law, and a state court's determination of state

law receives deference in federal court.  *Pinkney*, 876 F.3d at 1297–99.

Attempted aggravated battery is a necessary lesser included offense of attempted

first-degree murder.  *Lathan v. State*, 270 So. 3d 1262, 1265 (Fla. 5th DCA 2019) (citing

Fla. Std. Jury Instr. (Crim.) 6.2).  However, the jury convicted Perez of attempted first-degree

murder and attempted aggravated battery was not the next immediate lesser included offense.

Consequently, the failure to give the attempted aggravated battery instruction was not

fundamentally erroneous.  *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978) ("Only the failure

to instruct on the next immediate lesser-included offense (one step removed) constitutes error

that is *per se* reversible.  Where the omitted instruction relates to an offense two or more steps

removed, . . . reviewing courts may properly find such error to be harmless."); *Reed v. State*, 837

So. 2d 366, 369–70 (Fla. 2002) ("[F]undamental error is not subject to harmless error review.

By its very nature, fundamental error has to be considered harmful.  If the error was not harmful,

it would not meet our requirement for being fundamental.").  Because the issue would not have succeeded on appeal, appellate counsel was not ineffective.  *Pinkney*, 876 F.3d at 1297.

Also, the steps-removed analysis is based on the requirement that "the jury is given a fair opportunity to exercise its inherent 'pardon' power by returning a verdict of guilty as to the next lower crime." *Abreau*, 363 So. 2d at 1064.  The state supreme court recently "reconsider[ed] the jury pardon doctrine and more closely align[ed] [Florida courts] with the majority of jurisdictions that do not recognize what is most accurately described as a fundamental right to instructions that facilitate partial jury nullification." *Knight v. State*, 286 So. 3d 147, 151 (Fla. 2019).  Consequently, "the failure to give an instruction on a lesser included offense is not fundamental error," and Perez could not demonstrate prejudice under *Strickland*.  *Roberts v. State*, 299 So. 3d 9, 12 (Fla. 4th DCA 2020).  *Accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.").  Ground Eleven is denied.

### **Ground Twelve**

Perez contends that the evidence was insufficient to prove attempted premeditated murder.  (Doc. 1 at 31)  Perez asserts that appellate counsel was ineffective for not raising the issue on direct appeal as fundamental error.  (Doc. 1 at 31–32)

Perez raised this claim in his petition alleging ineffective assistance of appellate counsel and the state appellate court denied the claim in an unelaborated order.  (Doc. 15-6 at 18–23, 96) The unelaborated order is an adjudication on the merits owed deference under Section 2254(d). *Richter*, 562 U.S. at 99.  Because trial counsel moved for a judgment of acquittal at trial and argued that the evidence was insufficient to prove the crimes, appellate counsel was ineffective

only if the issue would have succeeded on direct appeal.  (Doc. 15-4 at 754–55)  *Diaz v. Sec'y, Dep't Corrs.*, 402 F.3d 1136, 1144–45 (11th Cir. 2005) ("Appellate counsel would not have prevailed on this argument, and nonmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel.").

For attempted first-degree murder, the prosecution had to prove: (1) the defendant did some act intended to cause the death of the victim that went beyond just thinking or talking about it; (2) the defendant acted with a premeditated design to kill the victim; and (3) the act would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or he failed to do so.  Fla. Std. Jury Instr. (Crim.) 6.2 (2011).  *Accord* Fla. Stat. §§ 782.04(1)(a) (2011) and 777.04 (2011); *Moss v. State*, 270 So. 3d 559, 560 (Fla. 1st DCA 2019).  "Premeditation may be inferred from such facts as 'the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'" *Dubose v. State*, 210 So. 3d 641, 652 (Fla. 2017) (citation omitted).

Under state law, a trial court denies a motion for judgment of acquittal if the record, viewed in the light most favorable to the prosecution, contains competent, substantial evidence supporting the elements of the crime.  *Jackson v. State*, 18 So. 3d 1016, 1025 (Fla. 2009).  "'[A] trial court should rarely, if ever, grant a motion for judgment of acquittal based on the state's failure to prove mental intent.'"  *Herring v. State*, 132 So. 3d 342, 347 (Fla. 4th DCA 2014) (citation omitted).

At trial, Virts testified that he walked up to Perez's home and saw Perez standing next to his front door.  (Doc. 15-4 at 410–11)  Perez accused Virts of working with the police, the two threatened each other, and Perez went inside.  (Doc. 15-4 at 410–12)  Virts left to warn

Shumaker that he thought that Perez went to get a gun.  (Doc. 15-4 at 413)  Perez followed Virts out to the car with a gun.  (Doc. 15-4 at 415–17)  Perez pointed the gun at Virts's face and demanded that Virts "convince[ ] him real quick that [Virts was] not the police."  (Doc. 15-4 at 417–19)  Shumaker tried to intervene.  (Doc. 15-4 at 419–21)  Perez pointed the gun at Shumaker and told her to "shut the f*ck up."  (Doc. 15-4 at 421, 423–24)  Shumaker responded by asking Perez, "What are you going to do?  Shoot me?"  (Doc. 15-4 at 422)  Perez shot Shumaker — point-blank in the face.  (Doc. 15-4 at 422)  Perez told Virts, "We're going to find out if you're the police," and shot Shumaker a second time in the back of the head while she lay wounded on the ground.  (Doc. 15-4 at 425–26)  Virts dropped to the ground and ran away on his hands and feet.  (Doc. 15-4 at 430–41)  As Virts ran away, Perez fired his gun several times at Virts but missed.  (Doc. 15-4 at 430–33)  Shumaker survived the shooting and Virts identified Perez as the shooter.  (Doc. 15-4 at 434–35, 440–41, 479–81, 499–500, 502–03)

Viewed in the light most favorable to the prosecution, Virt's testimony was competent, substantial evidence supporting the convictions for attempted first-degree murder.  *Morales v. State*, 170 So. 3d 63, 67 (Fla. 1st DCA 2015) ("Premeditation can be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.") (citation and quotations omitted); *Ferraro v. State*, 149 So. 3d 1157, 1158 (Fla. 4th DCA 2014) ("The State presented sufficient evidence that showed Defendant had formed the requisite premeditation, including evidence that he arranged to pick up some 'big artillery' shortly before the shootings and his remarks that he intended on 'bring[ing] . . . fire.'"); *Etienne v. State*, 15 So. 3d 890, 893 (Fla. 4th DCA 2009) ("[T]he jury could have found that Etienne consciously was prepared to kill David and Braulio before either approached him because Etienne pointed the gun at the brothers from the outset.").

Because the issue would not have succeeded on appeal, the state court did not unreasonably apply *Strickland*. *Diaz*, 402 F.3d at 1144–45. Ground Twelve is denied.

## Ground Thirteen

Perez contends that the reasonable doubt jury instruction was incorrect. (Doc. 1 at 33) Perez asserts that trial counsel was ineffective for not raising the issue on direct appeal as fundamental error. (Doc. 1 at 33–34)

Perez raised this claim in his petition alleging ineffective assistance of counsel and the state appellate court denied the claim in an unelaborated order. (Doc. 15-6 at 23–25, 96) The unelaborated order is an adjudication on the merits owed deference under Section 2254(d). *Richter*, 562 U.S. at 99. Because trial counsel did not object to the reasonable doubt instruction (Docs. 15-4 at 526–27 and 15-5 at 13–15), appellate counsel was ineffective only if the reasonable doubt instruction was fundamentally erroneous. *Pinkney*, 876 F.3d at 1296–97. By denying the claim in an unelaborated decision, the state court implicitly concluded that the instruction was not fundamentally erroneous. *Pinkney*, 876 F.3d at 1296–97. Fundamental error is an issue of state law, and a state court's determination of state law receives deference in federal court. *Pinkney*, 876 F.3d at 1297–99.

The trial court instructed (Doc. 15-5 at 130–31):

> The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Information through each stage of the trial unless it's been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
>
> To overcome the defendant's presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.
>
> The defendant is not required to present evidence or prove anything.
>
> Whenever the words "reasonable doubt" are used, you must consider the following:

> A reasonable doubt is not a mere possible doubt,
> a speculative, imaginary, or forced doubt. Such a doubt
> must not influence you to return a verdict of not guilty if
> you have an abiding conviction of guilt. On the other
> hand, if, after carefully considering, comparing, and
> weighing all the evidence, there is not an abiding
> conviction of guilt, or[ ] if[ ] having a conviction, it's
> one which is not stable but one which wavers and
> vacillates, then the charge is not proved beyond every
> reasonable doubt, and you must find the defendant not
> guilty because the doubt is reasonable.

> It's to the evidence introduced in this trial and to it alone that you are to
> look for that proof.

> A reasonable doubt as to the guilt of the defendant may arise from the
> evidence, conflict in the evidence, or the lack of evidence.

> If you have a reasonable doubt, you should find the defendant not guilty.
> If you have no reasonable doubt, you should find the defendant guilty.

Because the instruction is identical to Florida's standard jury instruction, the instruction

was not fundamentally erroneous and the state court did not unreasonably deny the claim.

Fla. Std. Jury Instr. (Crim.) 3.7.  *Accord Usry v. State*, 284 So. 3d 1128, 1129 (Fla. 2d DCA

2019) ("[T]he failure to instruct the jury as to the critical concept of reasonable doubt constitutes

fundamental error.").  In his state petition, Perez argued that the reasonable doubt instruction was

fundamentally erroneous because the trial court did not also instruct the jury on the forcible

felony exception to self-defense.  (Doc. 15-6 at 24–25)  Because Perez did not assert

self-defense, the record refutes this claim.  (Doc. 15-5 at 86–87, 90–92, 101–03)  Consequently,

Ground Thirteen is denied.

## **Grounds in Supplemental Memorandum**

Twenty-three months after he filed his habeas petition, Perez through counsel filed

a supplemental memorandum with new grounds.  (Doc. 21)  Perez asserts that trial counsel was

ineffective during closing argument for not adequately arguing the absence of both gunshot

residue and DNA evidence linking Perez to the crimes ("Ground Fourteen"), trial counsel was ineffective for not advising Perez about his right to a presentence investigation report ("Ground Fifteen"), and trial counsel was ineffective for not providing Perez with the sentencing scoresheet ("Ground Sixteen").  (Doc. 21 at 3–5)

Because Perez did not obtain the Respondent's written consent or the Court's leave before amending his petition with these new grounds, the supplemental memorandum is not properly before the Court.  28 U.S.C. § 2242 ("[An application for a writ of habeas corpus] may be amended or supplemented as provided in the rules of procedure applicable to civil actions."); Fed. R. Civ. P. 15(a)(2) (requiring either the opposing party's written consent or the court's leave to amend a pleading beyond 21 days of service or 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f) if a responsive pleading is required).  Construing the supplemental memorandum as an untimely reply, Perez waived the new grounds.  *Olivieri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.").

Even construing the supplemental memorandum to include a motion for leave to amend the petition, the construed motion is denied because amending the petition with the new grounds is futile.  *Crawford's Auto Ctr., Inc. v. State Farm Mutual Auto. Ins. Co.*, 945 F.3d 1150, 1162–63 (11th Cir. 2019).  *Accord* Rule 4, Rules Governing Section 2254 Cases ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.").

**Ground Fourteen**

Perez asserts that trial counsel was ineffective for not adequately arguing the absence of

gunshot residue and DNA evidence linking Perez to the crimes.  (Doc. 21 at 3–4)  During closing

argument, trial counsel told the jury (Doc. 15-5 at 86–87, 100–01):

> [Trial counsel]:    In my opening statements I told you that
> I believe that the evidence would show that the
> defendant is not guilty, that the State's case is
> basically going to be based on several people
> that I was going to suggest to you that were not
> credible witnesses, that for one reason or the
> other you would have questions about their truth
> and veracity or their credibility and that none of
> their testimony or — excuse me — that the State
> was not going to be able to present to you any
> physical or scientific or forensic evidence that
> linked the defendant, Jason Perez, to this crime.
> They did have physical items that were seized,
> and they did do testing. But as I indicated in my
> opening statements and I believe it [bore] fruit
> throughout the trial is that you never heard one
> bit of evidence, scientific evidence of any sort,
> that linked the defendant to this crime.
>
> . . .
>
> But I suggest the interesting thing about
> [Detective Mike Bailey's] testimony is the fact
> that clothes were seized from the hotel room.
> And the police thought that it was particularly
> significant because it was — as he
> acknowledged, it was the only clothes that were
> there, the only clothes that Mr. Perez had. And
> there certainly has been no evidence that it had
> been washed or in any way disturbed. The
> reason it was important was because — and
> that's the reason it was sent to the lab for
> gunshot residue analysis because the very — if it
> was full of gunshot residue or any evidence of
> gunshot residue, I guarantee you that would
> have been paraded in here like the American
> flag. But now because it came back negative, it's
> really — it's really not important. I think that the
> testimony was that it's discouraged. Well, it's
> discouraged when it's negative. But I guarantee
> you that would have been the prime piece of

> evidence in this case if that had come back with
> any kind of gunshot residue.
>
> And, again, there has been — by the
> circumstances of the investigation it was the
> only clothes that Mr. Perez had, and there was
> no evidence that it had been in any way
> disturbed.
>
> There is — despite all the testimony of forensic
> analysis, we know for a fact that in this case
> there was never any firearm seized, a pistol, or
> revolver. All that that investigation shows is
> there was one gun fired, that the projectiles all
> relate to one firearm and that it was likely
> a revolver. As I've said before and I'll say it for
> the last time, there is nothing physically,
> forensically, or scientifically linking Jason Perez
> to this crime. The clothing was never identified.
> And, again, now it's considered by the State to
> be unimportant.
>
> The rest of the testimony in this case from the
> State was the crime scene technicians that are
> called "forensic science specialists" that really
> do not do any type of analysis of the evidence.

Because the record plainly refutes the claim, amending the petition with Ground Fourteen

is futile. *Crawford's Auto Ctr.*, 945 F.3d at 1162–63.

## **Ground Fifteen**

Perez asserts that trial counsel was ineffective for not informing him of his right to a

presentence report, and Perez did not knowingly waive his right to the report.  (Doc. 21 at 4)

After the trial judge rendered the verdict and excused the jury, the prosecutor advised that Perez

was not entitled to a presentence report because Perez had a prior felony conviction.  (Doc. 15-5

at 158–59)  The sentencing scoresheet confirms that Perez had a prior conviction for

a third-degree felony.  (Doc. 15-2 at 122)  Also, trial counsel advised that "[Perez] would prefer

to be sentenced today."  (Doc. 15-5 at 159)

Perez had a prior felony conviction and did not have a right to a presentence report.
Fla. R. Crim. P. 3.710(a) (2013). *Accord White v. State*, 271 So. 3d 1023, 1026 (Fla. 4th DCA
2019) ("[A] PSI is required for a first-time felony offender or juvenile offender where the trial
court has sentencing discretion and where probation is not ordered.").  Even if Perez had
a right to the report, trial counsel could have waived that right on behalf of Perez. *Gonzalez
v. United States*, 553 U.S. 242, 248 (2008) ("For certain fundamental rights, the defendant must
personally make an informed waiver.  For other rights, however, waiver may be effected by
action of counsel.") (citations omitted) (quoting *New York v. Hill*, 528 U.S. 110, 114–15 (2000)).
*Accord Culver v. State*, 163 So. 3d 622, 623 (Fla. 4th DCA 2015) ("Although appellant contends
that his right to a presentence investigation could not be waived by his attorney, we rejected this
same argument in *Ortiz v. State*, 9 So.3d 774, 776 (Fla. 4th DCA 2009), where we held that the
preparation of the presentence investigation in a habitual offender case was a procedural right
which did not require a defendant's personal waiver.").  Lastly, Perez does not identify what
mitigating evidence in the report would have changed the outcome of his sentence.  Because the
record plainly refutes the claim and the claim is conclusory and speculative, amending the
petition with Ground Fifteen is futile.  *Strickland*, 466 U.S. at 694; *Crawford's Auto Ctr.*,
945 F.3d at 1162–63.

### **Ground Sixteen**

Perez asserts that trial counsel was ineffective for not providing Perez the sentencing
scoresheet.  (Doc. 21 at 4–5)  Perez contends that the scoresheet assessed severe victim injury
points and the victim did not suffer injury.  (Doc. 21 at 4–5)  Perez further asserts that trial
counsel was ineffective for not objecting to the assessment of the bodily injury points and not
arguing for an appropriate sentence.  (Doc. 21 at 4–5)

The sentencing scoresheet did assess points for "severe" bodily injury to calculate a lowest permissible sentence under the Criminal Punishment Code of 9.5 years.  (Doc. 15-2 at 122)  However, the jury found that Perez (1) discharged a firearm and caused great bodily harm for the attempted murder of Shumaker and (2) discharged a firearm for the attempted murder of Virts.  (Doc. 15-2 at 120–21)  Those findings subjected Perez to statutory 25-year and 20-year mandatory minimum terms.  Fla. Stat. § 775.087(2)(a)(2), (3).  Because the mandatory minimum terms exceeded the lowest permissible sentence under the Criminal Punishment Code (Doc. 15-2 at 123), the mandatory minimum terms controlled and the assessment of bodily injury points did not impact his lowest permissible sentence.  Fla. Stat. § 775.087(2)(c) ("If the minimum mandatory terms of imprisonment imposed pursuant to this section exceed the maximum sentences authorized by Section 775.082, Section 775.084, or the Criminal Punishment Code under chapter 921, then the mandatory minimum sentence must be imposed.").

Even so, the scoresheet properly assessed the bodily injury points for the attempted murder of Shumaker.  Fla. Stat. § 921.0021(7)(a) ("'Victim injury' means the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense.").  The jury found that Perez inflicted great bodily injury on Shumaker, and the scoresheet appropriately assessed the victim injury points.  (Doc. 15-2 at 120)  *Butler v. State*, 297 So. 3d 691, 695 (Fla. 1st DCA 2020) ("Because the term 'severe' is undefined, we apply its plain and ordinary meaning. 'Severe' is commonly defined as 'serious' or 'of a great degree.'") (citation omitted).

Lastly, at sentencing, trial counsel argued (Doc. 15-5 at 166):

> [Trial counsel:]    Judge, I would ask the Court to impose the minimum sentence allowed by law. This is still a very young man, and I would hope that,

assuming that worst case scenario that his appeal
is not successful, that he could have an
opportunity to live a lawful, productive life if he
is able to be released in a reasonable time.

Judge, I certainly understand the jury's verdict,
and we have to live with it at this point. But
I suggest that there were a lot of inconsistencies
and issues that are questionable about the
credibility of the evidence that was presented.
And I would ask the Court to consider
a sentence that the law provides for minimum
mandatories and minimum sentences, and
I would ask the Court to impose those.

Because the record plainly refutes the claim, amending the petition with Ground Sixteen

is futile.  Any claims not specifically addressed in this order have been reviewed and are without

merit.

It is therefore **ORDERED AND ADJUDGED:**

1.      The petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

2.      The construed motion for leave to amend the petition with additional grounds

(Doc. 21) is **DENIED** because the amendment is futile.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this

case.

4.      Perez does not make a substantial showing of the denial of a constitutional right

and does not demonstrate that reasonable jurists would find debatable both the merits of the

underlying claims and the procedural issues.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*,

529 U.S. 473, 478 (2000).  Consequently, a certificate of appealability and leave to appeal

*in forma pauperis* are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, this December 31, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unpresented parties, if an